**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JERMAINE RUSSELL JOHNSON,**

      **Petitioner-Defendant,**

**v.**                            **Civil Action No. 3:12-cv-120**
                                     **Criminal Action No. 3:09-cr-85-1**
                                   **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

      **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

## I.   INTRODUCTION

On October 5, 2012, Jermaine Russell Johnson ("Petitioner"), proceeding *pro se*, filed two (2) separate Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Civil Action No. 3:12-cv-120, Docket Nos. 1 and 2; Criminal Action No. 3:09-cr-85-1, Docket Nos. 87 and 89.)   Those motions were substantially similar in content.   On November 8, 2012, the undersigned entered an Order directing the Government to respond to Petitioner's motion.  (Docket No. 94.)[1]  The Government filed its response on November 27, 2012. (Docket No. 98.)  Petitioner filed a reply on December 28, 2012.  (Docket No. 99.)  Also pending are Petitioner's "Motion Pursuant the Applicable Rules under 28 U.S.C. § 2255 to Request Leave and 'Expand the Record' to Submit Attached Affidavit," filed on November 8, 2012 (Docket No. 95), and "Urgent Memo and Motion for Leave to Supplement," filed on December 28, 2012 (Docket No. 101).

The undersigned now issues this Report and Recommendation on Petitioner's motion without

_____

[1]From this point, all docket numbers refer to entries in Criminal Action No. 3:09-cr-85-1.

holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II.   FACTS

### A.   *Conviction and Sentence*

On November 17, 2009, a Grand Jury sitting in the Northern District of West Virginia returned an Indictment against Petitioner, charging him with several drug trafficking crimes. (Docket No. 1.) On April 15, 2010, Petitioner signed a written plea agreement in which he agreed to plead guilty to Count Five of the Indictment, charging him with possession with the intent to distribute 43.6 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Docket No. 53 at 1.) Petitioner waived his right to appeal and collaterally attack his sentence. Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the even that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Id. at 4.) Petitioner's plea agreement also contained the following stipulation:

> Pursuant to Sections 6B1.4, 1B1.3, and 2D1.1 [Application Note 12] of the Guidelines, the parties hereby stipulate and agree that the total drug relevant conduct of the defendant with regard to the Indictment is 460.66 grams cocaine base, also known as "crack" and 22.1 grams heroin. The parties understand that pursuant to Section 6B1.4(d), the Court is not bound by the above stipulation and is not required

to accept same. Defendant understands and agrees that should the Court not accept the above stipulation, defendant will not have the right to withdraw his plea of guilty.

(Id. at 3-4.)

On April 21, 2010, Petitioner appeared before now-retired United States Magistrate Judge David J. Joel to enter his plea of guilty in open court. (Docket No. 73.) At the time of his plea, Petitioner was 29 years old and had completed the tenth grade. (Id. at 4:11-14.) Petitioner confirmed that he and his counsel had reviewed the entire plea agreement before he signed it. (Id. at 10:19-21.) The Court reviewed all the rights Petitioner was giving up by entering a plea of guilty. (Id. at 16:19-18:8.) During the hearing, the Government presented the testimony of Deputy George Bradshaw of the Eastern Panhandle Drug and Violent Crimes Task Force to establish a factual basis for the plea. (Id. at 18:23-21:14.)

After the Government presented Deputy Bradshaw's testimony, Petitioner advised the Court that he was guilty of Count Give of the Indictment. (Id. at 21:17-24.) Additionally, Petitioner testified under oath that no one had attempted to force him to plead guilty and that his plea was not the result of any promises other than those in the plea agreement. (Id. at 22:1-10.) When asked, Petitioner acknowledged that his counsel had adequately represented him and that his counsel had not left anything undone regarding his defense. (Id. at 22:23-23:4.) In conclusion, Magistrate Judge Joel determined that Petitioner's plea was made freely and voluntarily, that Petitioner was competent to make a plea of guilty, that Petitioner had "full knowledge and understanding" of the consequences of his guilty plea, and that there was a basis in fact for the plea. (Id. at 23:8-15.)

Petitioner appeared before Chief United States District Judge John Preston Bailey for sentencing on July 28, 2010. (Docket No. 74.) Prior to sentencing, counsel for Petitioner had lodged an objection to the finding in the Presentence Investigation Report ("PSR") that a two-level

enhancement pursuant to U.S.S.G. 2D1.1(b)(1) should be applied for Petitioner's possession of a dangerous weapon.  (Docket No. 62 at 3; Docket No. 64 at 33-37.)  Counsel reiterated this objection at sentencing.  (Docket No. 74 at 4:17-8:13.)  The Court overruled counsel's objection and applied the enhancement.  (Id. at 9:23-10:13.)   The Court then sentenced Petitioner to 135 months of incarceration to be followed by a term of four years of supervised release.  (Id. at 18-19.)

### B.    *Direct Appeal*

On appeal, Petitioner challenged the "firearm enhancement used to calculate his Guidelines range." United States v. Johnson, 425 F. App'x 195, 196 (4th Cir. 2011).  The Fourth Circuit agreed with the Government that Petitioner had waived his right to challenge his sentence in his plea agreement and dismissed his appeal.  Id.  The Supreme Court denied Petitioner's petition for a writ of certiorari on October 3, 2011.  Johnson v. United States, 132 S. Ct. 317 (2011).

### C.    *Federal Habeas Corpus*

#### 1.    **Petitioner's Motion**

In his motion, Petitioner raises the following claims:

1.    Counsel was ineffective for failing to file a motion to withdraw Petitioner's guilty plea because Petitioner did not foresee that a two-level enhancement under U.S.S.G. § 2D1.1(b) would be applied;

2.    Counsel failed to obtain affidavits from individuals that heard Petitioner's co-defendant say that he lied to officers about information pertaining to Petitioner's case;

3.    Counsel failed to challenge witness statements regarding Petitioner's relevant conduct that were contained in his PSR; and

4.    Counsel failed to investigate Petitioner's relevant conduct, including failing to present witness testimony concerning such conduct; and

5.    Counsel failed to investigate and present evidence that Petitioner could not receive a two-level enhancement for possession of a firearm.

(Docket No. 89 at 4-14.)

**2. Government's Response**

In opposition to Petitioner's motion, the Government asserts the following:

1. Petitioner's motion was untimely filed;

2. Petitioner waived his right to collaterally attack his conviction and sentence;

3. Petitioner's direct appeal addressed his claims, or they were waived;

4. Errors in application of the Sentencing Guidelines are not subject to collateral review;

5. Petitioner has not established ineffective assistance of counsel; and

6. Petitioner's guilty plea was valid.

(Docket No. 98 at 5-10.)

**3. Petitioner's Reply**

In his reply, Petitioner asserts that his motion was timely filed. (Docket No. 99 at 1.) He further elaborates on the claims presented in his motion. (Id. at 2-15.)

## III. ANALYSIS

*A. Timeliness of Petitioner's Motion*

In its response, the Government asserts that Petitioner's motion was untimely filed. (Docket No. 98 at 6.) Specifically, the Government states:

> Petitioner did not seek a writ of certiorari so his conviction became final 90 days after April 26, 2011, the date of the per curiam opinion and judgment. This is July 26, 2011. The Statute of Limitations expired on July 26, 2012. The instant § 2255 petition was filed 71 days late. It should be dismissed.

(Id.) In his reply, Petitioner asserts that the Government's argument is "factually inaccurate" because he did file a writ of certiorari. (Docket No. 99 at 1.)

A one-year statute of limitations applies to all motions brought pursuant to 28 U.S.C. § 2255. 28 U.S.C. § 2255(f).  As § 2255(f) states, the one-year limitations period begins to run from four possible dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, Petitioner was sentenced on July 28, 2010.  He pursued a direct appeal to the Fourth Circuit and also filed a petition for a writ of certiorari with the Supreme Court.  According to the Fourth Circuit, "the judgment of conviction of a prisoner who has petitioned for certiorari becomes final for purposes of the one-year period of limitation in § 2255 ¶ 6(1) when the Supreme Court denies certiorari after a prisoner's direct appeal."  United States v. Segers, 271 F.3d 181, 186 (4th Cir. 2001).  As noted above, the Supreme Court denied Petitioner's petition for a writ of certiorari on October 3, 2011.  Johnson v. United States, 132 S. Ct. 317 (2011).  Therefore, pursuant to 28 U.S.C. § 2255(f)(1), Petitioner's conviction became final on October 3, 2011.  Petitioner had until October 3, 2011 to timely file his motion.  Petitioner's motions were filed with this Court on October 5, 2012; however, they were delivered to the prison's mail system on September 16, 2012 and October 2, 2012, respectively (Docket No. 87 at 13; Docket No. 89 at 13.)  Under the "mailbox

rule,"[2] therefore, the undersigned finds that Petitioner filed his motion before the statute of limitations expired; accordingly, his motion is timely.

**B.      *Applicable Law Regarding Petitioner's Waiver***

### 1.      Law Governing Waivers of Direct Appeal and Collateral Attack Rights

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality."  Id.  The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial."  United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992).  Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'"  United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted).  However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor.  Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his

---

[2] Houston v. Lack, 487 U.S. 266, 270 (1988) (a *pro se* prisoner files court documents when they are delivered to prison authorities for mailing).

right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures.  Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights.  Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary."  Id. at 220.  The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two.  Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver."  Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[3]  However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights.  Cannady, 283 F.3d at 645 n.3 (collecting cases).  Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver."  Braxton, 358 F. Supp. 2d at 503.

---

[3]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton.  See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

**2.      Law Governing Whether a Waiver is Knowing and Intelligent**

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

**C.      *Petitioner's Ineffective Assistance of Counsel Claims***

**1.      Standard Governing Claims of Ineffective Assistance of Counsel**

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the

wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002).

Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate

counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289

(4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See

Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed.

See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has

an even higher burden: "he must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v.

Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The

Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a

reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel. First,

there are "personal" decisions that require consent from the defendant, such as the decision to enter

a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether

to testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). The second category

includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should

be introduced, what stipulations should be made, what objections should be raised, and what pre-

trial motions should be filed.'" Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir.

1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to

the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations and internal quotation marks omitted).

### 2. Claims Alleging Counsel's Failure to Challenge § 2D1.1 Enhancement

In his first claim for relief, Petitioner alleges that counsel was ineffective for failing to file a motion to withdraw his guilty plea because Petitioner "did not foresee the USSG 2D1.1(b) enhancement." (Docket No. 87 at 5; see also Docket No. 89 at 4.) He also argues that counsel "failed to investigate and present evidence prior to sentencing that Petitioner could not receive a relevant conduct and enhancement for a firearm that he was not charge with [sic], was not part of the plea agreement and that it was a violation under Booker US (2005) and Apprendi v. New Jersey U.S. (2000)." (Docket No. 89 at 14.)

As noted above, Petitioner's plea agreement contained a waiver of his appellate and collateral attack rights. (Docket No. 53 at 4.) As to ineffective assistance of counsel claims raised regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated that the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea–including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas–were conducted in violation of their Sixth Amendment right to counsel" is not waived by a general waiver of appellate rights contained in the plea agreement. United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, "upon first blush it appears that [such] claims arising after the guilty plea and/or during sentencing are not barred by a general waiver of appeal rights." Oden v. United States, Civil No. 3:13-cv-93, Criminal No. 3:11-cr-56, 2014 WL 2462993, at *8 (N.D. W. Va. June 2, 2014.) Here, because Petitioner is challenging counsel's actions after his plea but prior to sentencing, these claims are not barred by his waiver.

U.S.S.G. § 2D1.1(b)(1) states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." According to the commentary accompanying this section,

> [t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly probable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 cmt. 3 (2010). Accordingly, the enhancement is proper when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010) (internal quotation marks omitted); see also United States v. Falesbork, 5 F.3d 715, 721 (4th Cir. 1993) (noting that the sentencing court "must look to the entire course of relevant criminal conduct, not merely the narrow offense of conviction" when determining whether the enhancement should apply). "[T]he proximity of guns to illicit narcotics can support a[n] . . . enhancement of a defendant's sentence under section 2D1.1(b)(1) . . . . Similarly, firearms that are readily accessible during drug activities can be deemed as possessed in connection there-with." Manigan, 592 F.3d at 629 (internal quotation marks and citations omitted). "[S]o long as a firearm's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon [] to the offense conduct." Id. (internal quotation marks omitted). While the Government has the burden of proving that the weapon was possessed, the defendant has the burden of demonstrating a clear improbability that the weapons were connected to his offense. See United States v. Harris, 128 F.3d 850, 853 (4th Cir. 1997).

Even if the undersigned were to accept Petitioner's characterization of counsel's actions as

falling outside "the wide range of reasonable professional assistance," <u>Carter</u>, 283 F.3d at 249, the undersigned finds that Petitioner cannot demonstrate that he suffered any prejudice from counsel's failure to file a motion to withdraw Petitioner's plea and alleged failure to investigate and present evidence regarding the enhancement.  First, as to Petitioner's argument that counsel should have argued that the two-level enhancement violated both <u>United States v. Booker</u>, 543 U.S. 220 (2005) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the undersigned finds that his claim is meritless. "'[T]he factual findings needed to calculate a defendant's advisory Guidelines range are still within the district court's province,' so long as those factual findings neither increased the mandatory minimum sentence or the statutory maximum sentence." <u>United States v. Wood</u>, No. 3:99-cr-144, 2014 WL 2766125, at *2 (E.D. Va. June 18, 2014); <u>see also</u> <u>United States v. Dash</u>, 15 F. App'x 53, 54 (4th Cir. 2001) (per curiam) (noting that the court has rejected an argument that "it was error to apply the weapons enhancement without charging possession of a firearm in the indictment and presenting it to the jury").  Here, the addition of the two-level enhancement increased neither Petitioner's mandatory minimum sentence nor the statutory maximum sentence.  Accordingly, Petitioner cannot demonstrate that counsel was ineffective for failing to raise a losing argument. <u>See</u> <u>Korhahrens v. Evatt</u>, 66 F.3d 1350, 1360 (4th Cir. 1995).

Furthermore, Petitioner cannot demonstrate prejudice from counsel's alleged failures because the two-level enhancement was appropriately applied.  Defendant's PSR states that

> on May 26, 2010, the undersigned contacted Trooper Bean, of the Eastern Panhandle Drug and Violent Crimes Task Force, regarding historical information that the defendant possessed a firearm during his drug activity.  Trooper Bean confirmed that an stolen AK-47 was recovered and that the defendant possessed it.  Based on the case agent's statements, the Probation Officer is recommending an enhancement for firearm possession.

(Docket No. 64 at 8.)  It further provides:

Both Witness #1 and #2 reportedly acknowledged that the defendant purchased stolen property, namely, an AK-47 rifle, and that it was stored at the home of the co-defendant, Derflinger.

Also interviewed was Witness #3 who advised that he/she was present on two occasions when the defendant cooked 62 grams of cocaine into crack cocaine. This witness also confirmed observing the defendant in possession of the above referenced stolen AK-47.

. . .

On May 20, 2008, Witness #6 provided information to agents. . . . This witness also stated that he/she observed the defendant in possession of a .40 caliber handgun while dealing crack cocaine and possessed an AK-47 at the witness' home.

(Id. at 10-11.) Furthermore, at sentencing, the Government stated the following:

MR. CAMILLETTI: Your Honor, no firearm was seized on May 15. This case arises from the investigation into a crack house that Mr. Derflinger was operating and Mr–this is the 24 Herranda Trailer Court crack house. And when the officers went in with a search warrant on May 15, they seized a large quantity of crack cocain. Some 43 or 46 grams in various places in the house.

Various witnesses had given information that Mr. Johnson had an AK-47 present at the house on earlier occasions. And indeed there were controlled buys on earlier occasions. As I review the summary in the presentence report, I believe there are six witnesses who relate seeing the AK-47 firearm. One of those witnesses also relates seeing a .40-caliber handgun. And Mr. Derflinger related that Mr. Johnson had a .40-caliber handgun at the trailer. But counsel is correct, no firearm was seized that day. And they were looking. So no firearm was seized.

The United State's [sic] position is that if there is credible evidence of the possession of a firearm, and–of a weapon, and if it is in connection with the drug dealing, and we think that that's not limited to one event but the entire range of events at the trailer court, if there's credible evidence, then the two-level enhancement applies. The Probation Officer has seen fit to apply the two-level enhancement, and I think it is appropriate in this case. The argument against that is really a very technical argument. They didn't seize it on May 15th and that's the day he pled guilty to. I think it is more encompassing than that, and the Court should consider that in fixing that adjustment.

(Docket No. 74 at 8:16-9:22.)

Petitioner offers no proof, other than his own claims, that he did not possess these firearms

in relation to his drug trafficking activities.  Although Petitioner claims that counsel was ineffective for failing to investigate and present evidence showing that he did not possess these firearms, Petitioner has failed to present proof of the specific evidence he alleges counsel should have presented.  See Bassett v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990).  Accordingly, the undersigned finds that Petitioner has not demonstrated a "clear improbability" that the firearms were connected to his offense.  See Harris, 128 F.3d at 853.

With respect to Petitioner's claim that counsel failed to file a motion to withdraw his guilty plea, such failure "is not presumed to be prejudicial." Dyess v. United States, Nos. 2:08-00849, 2:99-00012-01, 2011 WL 3667528, at *7 (S.D. W. Va. Aug. 22, 2011) (citing Franks v. Lindamood, 401 F. App'x 1 (6th Cir. 2010)).  In the Fourth Circuit, "[a] defendant does not have an absolute right to withdraw a guilty plea, but bears the burden of demonstrating a fair and just reason to justify his request for withdrawal." United States v. Leech, 409 F. App'x 633, 637 (4th Cir. 2011).  Courts consider the following factors to determine whether the defendant has met his burden:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000).

Notably, nowhere has Petitioner "credibly asserted his legal innocence." Id.  Instead, he asserts that he asked counsel to file a motion to withdraw his plea because he "did not foresee the USSG 2D1.1(b) enhancement." (Docket No. 87 at 5.)  However, during the Rule 11 hearing, the following colloquy occurred:

THE COURT: Do you understand that the United States Sentencing Guidelines may

play an important role in determining a sentence in your case?  Have you and your lawyer talked about how the Sentencing Guidelines might apply to your case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the sentencing Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed?  Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that both you and the Government will have an opportunity to object to the presentence report after it is completed?

THE DEFENDANT: Yes.

THE COURT: And after it is completed, do you understand both you and the Government would have an opportunity to challenge the reported facts and the application of the guidelines recommended by the Probation Officer?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the sentence imposed upon you may be different from any estimate that you and your lawyer have determined?

THE DEFENDANT: Yes.

. . .

THE COURT: Do you understand that if the Court accepts your plea of guilty and the sentence ultimately imposed upon you is longer than you had hoped for or expected, you're still bound by your guilty plea and would have no right to withdraw it?  Do you understand that?

THE DEFENDANT: Yes.

(Docket No. 73 at 14:20-16:18.)  A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Given Petitioner's statements during the Rule 11 colloquy, the undersigned finds that Petitioner understood that a

motion to withdraw his guilty plea based upon the two-level enhancement would not succeed. Accordingly, counsel's failure to raise such a losing argument does not equate to ineffective assistance. See Floyd v. United States, Nos. 7:04-1125-HFF, 7:06-1084-HFF, 2008 WL 3925841, at *5 (D.S.C. Aug. 26, 2008); see also United States v. Pea, No. 03-50013-07, 2009 WL 4782095, at *10-12 (W.D. La. Dec. 4, 2009).

In sum, the undersigned finds that counsel was not ineffective for failing to file a motion to withdraw Petitioner's guilty plea. The undersigned further finds that the enhancement pursuant to § 2D1.1 was properly applied. Therefore, because Petitioner's claims as to counsel's performance regarding the enhancement are meritless, the undersigned recommends that they be denied and dismissed.

### 3. Petitioner's Claims Regarding Relevant Conduct and the Validity of His Guilty Plea

As his second claim for relief, Petitioner claims that he sent a letter to counsel asking him to get "sworn affidavit from people who overheard [his co-defendant] say he lied to Eastern Panhandle Task Force about informantion [sic] in my case." (Docket No. 89 at 5.) He lists four names that he states he provided to counsel. (Id.) According to Petitioner, these individuals knew that his co-defendant lied about the drug weight attributed to Petitioner as relevant conduct. (Docket No. 87 at 6.) In another claim, Petitioner asserts that counsel was ineffective for not presenting the testimony of Vernon Housewright regarding Petitioner's relevant conduct. (Docket No. 87 at 8; Docket No. 89 at 8.) According to Petitioner, Housewright would have testified that he lied to investigators about various drug amounts. (Docket No. 89 at 8.) In his fourth claim, Petitioner alleges that counsel was ineffective for failing to object to witness statements contained in his PSR regarding relevant conduct. (Docket No. 87 at 9; Docket No. 89 at 7.) Finally, Petitioner argues that

counsel was ineffective for conducting "the necessary investigation regarding drug amounts attributed to Petitioner that were false but listed as relevant conduct." (Id. at 14.) In his reply, Petitioner asserts that counsel's failure to conduct this investigation created an "involuntary and unintelligent guilty plea." (Docket No. 99 at 8.)

### a. Petitioner's Guilty Plea Was Entered Knowingly and Voluntarily

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

During the plea colloquy, Petitioner stated that he understood that the terms of the plea agreement were recommendations to the sentencing Court, and that the sentencing Court could reject the stipulations without permitting him to withdraw his plea. (Docket No. 73 at 9:22-10:2.) Petitioner asserted that he had reviewed the plea agreement "in detail" with counsel before signing it. (Id. at 10:19-21.) He understood that the sentencing Court could consider any conduct, circumstances, or injuries relevant to his convictions when fashioning his sentence. (Id. at 15:20-24.) Petitioner further testified that he was pleading guilty of his own free will, that no one had

attempted to force or threaten him to plead guilty, and that his plea was not the result of any promises other than those contained in his written plea agreement. (Id. at 22:1-13.) Petitioner stated that his counsel had adequately represented him. (Id. at 22:23-25.) He denied that there was anything counsel did that he should not have done or anything that he did improperly. (Id. at 23:1-4.) Overall, Petitioner asserted that he understood the consequences of the plea agreement throughout the Rule 11 colloquy. Although Petitioner now claims that counsel's alleged failure to investigate his relevant conduct caused his plea to not be made knowingly and intelligently, "[a]bsent clear and convincing evidence to the contrary, [he] is bound by the representations he ma[de] under oath during [his] plea colloquy." Fields, 956 F.2d at 1299.

### b.     Petitioner's Claims Are Meritless

The Strickland Court recognized that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 690; see also Coles v. Peyton, 389 F.2d 224, 226 (4th Cir. 1968) (attorneys must "conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed"). The decision of "whether to call a defense witness is a strategic decision" that must be afforded "'enormous deference.'" United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994) (quoting United States v. Hirschberg, 988 F.2d 1509, 1513 (7th Cir. 1993)). The Strickland Court also emphasized that "a particular decision not to investigate must be assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. However, "an attorney's representation is deficient when he fails to contact and interview important prospective witnesses, especially when they were readily available or had been identified by the petitioner prior to trial." Huffington v. Nuth, 140 F.3d 572, 580 (4th

Cir. 1998). Although "a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." Id. (citations omitted).

Furthermore, to be successful on a claim that counsel failed to investigate, Petitioner must explain what additional evidence would have been obtained from the additional interviews or meetings. See Bassett, 915 F.2d at 940-41. "Complaints of ineffective assistance of counsel based upon 'uncalled witnesses' are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative." Talley v. United States, Nos. 1:06-cv-74, 1:94-cr-118, 2006 WL 3422997, at *9 (E.D. Tenn. Nov. 26, 2006). Conclusory allegations concerning what exculpatory testimony would have been presented "are insufficient to establish the requisite prejudice under Strickland." United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004).

The undersigned finds that Petitioner has failed to identify the specific physical or testimonial evidence these named individuals could offer regarding his relevant conduct that would have given rise to a duty for counsel to further investigate. See Bassett, 915 F.2d at 940-41 (holding that a petitioner must explain what additional evidence would have been obtained from the additional interviews or meetings). Here, Petitioner only states that counsel's investigation and defense was insufficient because he did not obtain affidavits from certain people and did not present testimony from Mr. Housewright. Petitioner has provided no proof, besides his own assertions, that these individuals would have provided exculpatory evidence as to relevant conduct. Therefore, under Strickland, a "heavy measure of deference" must be applied to counsel's actions. Strickland, 466 U.S. at 691. Accordingly, because Petitioner has not shown that counsel's actions fell outside

"the wide range of reasonable professional assistance," <u>Carter</u>, 283 F.3d at 249, these claims should also be denied and dismissed.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:12-cv-120, Docket Nos. 1 and 2; Criminal Action No. 3:09-cr-85-1, Docket Nos. 87 and 89) be **DENIED** and **DISMISSED WITH PREJUDICE**.   The undersigned further recommends that Petitioner's "Motion . . . to Request Leave and 'Expand the Record'" (Docket No. 95) and "Urgent Memo and Motion for Leave to Supplement" (Docket No. 101) be **GRANTED**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge.   Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.   28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Jermaine Russell Johnson.

DATED: June 25, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE